## GRACE *v.* MAYOR etc. OF HAWKINSVILLE.

While under the "general welfare clause," usually found in the charters of towns and cities, such municipal corporations may, within the limits fixed by the constitution, incur a debt, and, in the manner pointed out by law, issue bonds for the purpose of raising money to be used in the erection of needed public improvements, yet where, by a valid constitutional amendment to its charter, authority is conferred upon a particular municipal corporation to issue bonds in a sum not exceeding ten thousand dollars, for the purpose of erecting a system of water-works, such amendment operates as a limitation upon the power ordinarily deducible from the "general welfare clause"; and such municipal corporation has no authority to issue bonds for that purpose in excess of the sum named in the amendment to its charter, even though, in connection therewith, it be proposed to erect an electric light plant. The erection of a system of water-works under the amended charter must be dealt with, and provided for, as an independent public improvement, and an issue of bonds to raise money for that purpose can not be included in a more extended scheme which contemplates raising a greater sum for other and additional purposes.

Argued May 5, — Decided May 22, 1897.

Petition for injunction. Before Judge Smith. Pulaski county. April 1, 1897.

*Jordan & Watson*, for plaintiff.

*J. H. Martin*, for defendant.

ATKINSON, J. By an act of the General Assembly, approved December 8, 1882 (Acts of 1882–3, p. 243), the town of Hawkinsville was incorporated. By the 10th section of that act it was enacted : "That said corporation shall have and enjoy all the rights, privileges and powers incident to such corporations, not repugnant to the constitution of the United States, the constitution of this State, and the laws made in pursuance thereof; and said corporation, by their mayor and aldermen, shall have full power and authority to enact and enforce all ordinances, by-laws, rules and regulations, necessary for the good government of said town, and securing the health of the inhabitants thereof, and that may be necessary to carry this act into full effect." By an act approved December 20, 1892 (Acts of 1892, p. 149), the mayor and aldermen of the town of Hawkinsville were authorized to submit to the qualified voters of that town, under the provisions of the Code of 1882, §§ 508 (i)– 508 (m), the question of issuing bonds for water-works for said

town. This act provided, that in the event the qualified voters should approve the issue of such bonds, then the mayor and aldermen should have authority to issue them for the purpose of providing and building water-works for said town, in a sum not to exceed ten thousand dollars. Subsequently to the passage of this act, that is to say, on June 17, 1896, in pursuance of action previously taken thereon by the municipal authorities, an election was held in said town to determine whether or not it should issue bonds for the purpose of establishing electric lights and water-works in and for said town; and the proposition to issue such bonds having been approved, the mayor and aldermen were proceeding to issue and sell bonds for those purposes to the amount of thirty thousand dollars. Thereupon a petition was filed to enjoin this action of the corporate authorities, upon the ground that the mayor and aldermen had no authority of law, other than the provisions of the act above referred to, for the issuing of bonds, either for the purpose of erecting an electric light or water-works plant; and that inasmuch as they were proceeding to issue bonds in a sum in excess of that authorized by the charter power, such action was illegal, necessarily prejudicial to the petitioners, who were taxpayers, and thereupon they sought an injunction. The court refused the prayer of the petitioners, and they excepted.

In determining whether or not the court erred in refusing the injunction, it will be necessary only to ascertain whether the corporate authorities, in proceeding to issue the bonds in question, were acting within the powers conferred upon them by the charter of the town; and to what extent, if any, the powers originally conferred upon the town of Hawkinsville were modified by the act of 1892. The powers conferred by the original charter of the town were broad enough to include the authority sought to be exercised in the present instance. The "general welfare clause" contained in that charter is exceedingly broad and comprehensive in scope. It confers upon the municipal corporation, in express terms, "authority to enact and enforce all ordinances, by-laws, rules and regulations, necessary for the good government of said town, and

securing the health of the inhabitants thereof." In ascertaining the powers intended to be conferred by this last grant, it is only necessary to inquire what powers are, under our code, usually incident to corporations of the class to which the town of Hawkinsville belongs. A reference to section 786 of the Code of 1882, wherein such powers are defined, will show, amongst others, that the town had the power "to erect or authorize, or prohibit the erection of gas-works or water-works in the town," and numerous other powers which were by the General Assembly deemed necessary to the welfare of its inhabitants. Section 10 of the act incorporating the town, which is above quoted, when taken in connection with the provisions of the code defining the powers usually incident to municipal corporations of that class, embraces all the powers contained in the general welfare clauses usually found in the charters of towns and cities, and likewise many special grants of authority not usually embraced by such "general welfare clause." The lighting of its streets by electric light might, by the municipal authorities, have been well deemed essential to the good government of the town of Hawkinsville, and this alone would have authorized the adoption of such means to that end as might, in the discretion of the mayor and aldermen, have seemed best; and thus from this general power they would have derived the special power to establish a system of electric lights. An adequate supply of wholesome drinking-water might well have been deemed essential to the preservation of the good health of the community; and if so, in the charter was found power to establish a system of water-works, if that were necessary to provide the citizens with water for drinking and other domestic purposes. See *Mayor and Council of Rome* v. *Cabot*, 28 *Ga.* 50. Under the constitution of this State, the mayor and aldermen, within the limits embraced by that instrument, were authorized to incur such indebtedness as might be necessary to carry into effect the powers conferred by the charter; and, under the general law existing at the time, they would have had ample power to create such a debt as, in their discretion, was reasonably necessary in the erection of water-works and an electric light

plant. The act of 1892, however, operated as a modification of the general power conferred by the charter, and repealed it to the extent of limiting the sum authorized to be appropriated in the erection of water-works to ten thousand dollars. The effect of this act was to modify the powers conferred by the charter. It said to the mayor and aldermen, you may still erect your system of water-works, but at a cost not to exceed ten thousand dollars. These two statutes fall within the well established rule, that where the provisions of a former and later statute are inconsistent and repugnant in respect of the same subject-matter, the later statute is a repeal of the former to the extent of the inconsistency or repugnancy.

In the present case, under the first statute enacted, the power to issue bonds or to incur indebtedness for the erection of water-works was limited only by the wise discretion of the mayor and aldermen. Under the provisions of the second act, a limitation was placed upon the exercise of this discretion; so that in no event, for that purpose, could the indebtedness incurred by them exceed the sum of ten thousand dollars. The two provisions are inconsistent and repugnant. They fall within the provisions of the rule above stated. The latter statute repeals pro tanto the former. In this state of the law, how stands the contemplated issue of bonds? The proposition is to issue bonds to the extent of thirty thousand dollars for the two purposes jointly. The power to issue bonds for one of these purposes is limited. The municipal authorities do not appear to be acting within the limitation imposed by the statute. Some portion, then, of this issue of bonds is illegal. It not being possible to separate that which is legal from that which is illegal, the entire issue should have been enjoined. There is no provision of law for uniting the two public improvements under one scheme of issuing bonds. The power to issue bonds for water-works, as well as that to issue bonds· for electric lights, is derived from the general provisions of the charter of the town; but the act of 1892 imposes a limitation upon the former which does not apply to the latter power. For this reason the two improvements can not be amalgamated. They must necessarily be dealt with, under the present state

of the law applicable to the town of Hawkinsville, as separate and independent public improvements; and until the act of 1892 is repealed, its provisions can not be disregarded. We think, therefore, the court erred in refusing the injunction prayed for; and the judgment is accordingly

*Reversed. All the Justices concurring.*